JAMES McCREERY and Others, Plaintiffs, *v.* ROBERT GORDON, DONALD GORDON and ABRAHAM E. WOLF, as Assignee of DONALD GORDON, Defendants.

*Practice — defect of parties, when waived, unless the objection is taken by answer — evidence — what admissible to show the good faith of a vendee when the sale is attacked as fraudulent — what facts do not show a sale to be fraudulent.*

On October 2, 1883, Robert Gordon, a merchant carrying on business in Oswego, sold and transferred, by a bill of sale, his stock of goods and other property to Donald Gordon, a merchant carrying on business at Rochester, in consideration of $1,000 in cash and of the notes of the vendee for $9,000, payable in three, six, nine and twelve months thereafter. On the next day Robert made a general assignment of all his property, exclusive of that embraced in the sale, to one Oliphant. After the execution of the bill of sale, Donald Gordon

carried on the business in the stores formerly occupied by Robert until December 20, 1883, on which day he made a general assignment for the benefit of his creditors to one Wolf.

Upon the trial of this action, brought by a judgment creditor of Robert, to have the sale to Donald declared fraudulent, and to compel Wolf, his· assignee, to account for the property received, the defendants moved to dismiss the complaint, upon the ground that Oliphant, the assignee of Robert, had not been made a party, or to suspend the proceedings until he should be brought into the action.

*Held,* that the motion was properly denied for the reason:

*First.* That, as the defect appeared upon the face of the complaint, the objection should have been taken by demurrer or answer.

*Second.* That the complaint alleged, and the answer admitted, that the property sold to Donald was not included in the assignment.

After the execution of the bill of sale, Robert and all his employees were employed by Donald to carry on the business as before, and no sign was put up over the store indicating the business to be that of Donald. The vendor testified that the sale was made in good faith, and without any intent to hinder, delay, cheat or defraud his creditors. Upon the trial Donald offered to show that in the assignment which he made to Wolf, the notes given to Robert were preferred, and their payment secured.

*Held,* that the court erred in rejecting the evidence.

That the facts did not satisfy the court that a judgment should be rendered in favor of the plaintiff, and that a new trial should be ordered. (DANIELS, J., dissenting.)

MOTION by the defendants for a new trial, made at General Term under section 1001 of the Code of Civil Procedure.

*Blumenstiel & Hirsch,* for the plaintiffs.

*W. N. Cogswell,* for the defendants.

DAVIS, P. J.:

This action was brought by the plaintiffs to have a sale of personal property, made by the defendant Robert Gordon to the defendant Donald Gordon, adjudged fraudulent and void as against the creditors of Robert Gordon, and to require the defendant Wolf, as assignee ·of Donald Gordon, to account for the value of the property thus sold, which had come into his hands as such assignee, and to pay the amount of the plaintiffs' judgment out of the proceeds of such property and the balance to a receiver to be appointed by the court. Upon the trial, an interlocutory judgment in favor of the plaintiffs was ordered for an accounting on the part of the

defendant Wolf, as such assignee, and the payment by him of the proceeds of the property to the plaintiffs of their costs and judgment, and the residue, if any, to the receiver. The complaint alleges, in substance, that the defendant Robert Gordon was a merchant doing business in Oswego; that the defendant Donald Gordon was also a merchant doing business in the city of Rochester; that on the 2d of October, 1883, the defendant Robert Gordon sold and transferred by bill of sale, to Donald Gordon, his stock of goods and other property in consideration of the sum of $10,000 — $1,000 in cash and the balance in the purchaser's notes, payable in three, six and nine and twelve months thereafter; that on the next day the defendant Robert Gordon made a general assignment of all his property to one Richard J. Oliphant, of the city of Oswego, exclusive of the property embraced in the bill of sale to Donald Gordon; that Donald Gordon, after the bill of sale to him, commenced to carry on the business in the stores formerly occupied by Robert Gordon, and continued to carry on the same until December 20, 1883, on which day Donald Gordon made a general assignment of all his property to the defendant Wolf for the benefit of his creditors. Richard J. Oliphant, the assignee of Robert Gordon, is not made a party to the action. A motion was made at the trial for a dismissal of the complaint on the ground that Oliphant had not been made a party, or that the proceedings in the action be suspended until said Oliphant should be brought in as a party. The motion was denied and an exception duly taken.

It is insisted by the appellants' counsel that the denial of this motion was a fatal error, upon the ground that Oliphant, the assignee of Robert Gordon, is a necessary party to the action, because by the assignment he took title to or some interest in the property which had been sold by Robert Gordon to Donald Gordon. There are several answers to this argument:

*First.* That the facts appear upon the face of the complaint that are now claimed to show that Oliphant is a necessary party to the action, and no demurrer was interposed to the complaint on that ground, or objection taken in the answer for defect of parties. The omission to demur or to allege the defect in the pleadings is a waiver under the provisions of the Code, and it was too late for the defendants to raise the point at the trial.

*Second.* The complaint alleges, and the answer admits, that the property sold by Robert Gordon to Donald, prior to the assignment to Oliphant, was not included in the assignment.

This admission on the part of the defendants precludes them from objecting that Oliphant was not made a party, inasmuch as they have, after that admission, no right to insist that the title to the property sought to be reached by the plaintiffs was transferred to or vested in Oliphant.

We think the court did right in denying the motion to dismiss or to suspend the proceedings until the assignee Oliphant should be brought in as a party.

The plaintiffs were seeking to attack the validity of the sale by Robert Gordon to Donald Gordon and to reach the property sold or its proceeds in the hands of Wolf, the assignee of Donald Gordon. To do this they were bound to establish, by satisfactory evidence, that that sale was a fraudulent one as against the creditors of Robert Gordon. It was contended, on the part of the defendants, that the sale was made in good faith and for a full consideration and without any intent to defraud. As one fact tending to prove that that sale was fraudulent, it was shown by plaintiffs that $1,000 only was paid upon the purchase and the rest was paid in the unsecured notes of Donald Gordon at three, six, nine and twelve months, and that Donald Gordon, within a short time after the sale, had failed and made an assignment of his property to Wolf. And on the part of the defendants, as tending to prove that the notes, though unsecured, were given in good faith by Donald Gordon, it was offered to show that in the assignment which he made to Wolf those notes were preferred, so that their payment was in fact secured. This offer was excluded, and an exception taken. We think this was error. The defendants had the right to disarm the fact that Robert took unsecured notes from Donald Gordon, who soon thereafter became insolvent, of whatever force it had as tending to show fraud, by showing that the notes were made good and were secured by the preference of the assignment of Donald Gordon.

The plaintiffs produced no other evidence on the question of fraud than that of Robert Gordon. We think a careful examination of his testimony fails to show that the fraud, as found by the court,

was sufficiently established. He swore that the sale was made in good faith, without any intent to defraud; that the price paid was the fair and full value of the goods sold, although they were valued at their cost-price at a much higher sum. By producing him as their witness the plaintiffs gave him credit as a witness; and when the whole of his testimony, on cross and direct-examination, in relation to the sale, is taken into consideration, we think it extremely doubtful whether the findings based upon that testimony were sufficient to establish the alleged frauds. The fact that the purchaser of the goods failed in business three months after his purchase, was not of itself sufficient to uphold the finding of fraud. But if it were, that fact would have been greatly qualified by proof that he preferred the indebtedness upon such purchase in his assignment. The mere fact that at the time of the sale Robert Gordon was insolvent would not of itself vitiate the sale, nor would his subsequent employment, as manager of the stores, where the business was carried on by the purchaser, as it stands explained in his testimony, justify the finding of fraud. There was shown to be a change of possession and a continuation of the business by Donald, for the period of several months after the sale, and until his failure. We are not satisfied that upon the evidence the plaintiffs should have had judgment.

The motion for a new trial should be granted, with costs to abide event.

BRADY, J., concurred.

BRADY, J.:

It should be noted that the sale of which complaint is made was suggested by a gentleman connected with the firm of H. B. Claflin & Co., to whom the vendor was advised to apply for advice, and that he expressly denies any intention to defraud.

DANIELS, J. (dissenting):

The essential ground of the motion depends upon the question whether the court was justified in holding the sale of a stock of goods, made on the 2d day of October, 1883, by Robert Gordon to Donald Gordon, to have been fraudulent and void as to creditors. The vendor was engaged in business as a merchant in Oswego and

in the village of Mexico, in the county of Oswego, and the vendee was engaged in similar business in the city of Rochester. The vendor was at the time insolvent and unable to pay his debts, and the fact of his embarrassment was communicated to the agent of the vendee, and it resulted in the suggestion of the making of the sale of the goods which the plaintiffs, as judgment-creditors, assail as fraudulent. This sale included all the debts, fixtures, stock in trade and articles of property owned by the insolvent vendor. And it was made in consideration of the sum of $1,000 paid at the time and the remainder of the purchase-price of $10,000 was evidenced by four promissory notes of the vendee, the first for $1,500, the others for $2,500 each, payable in three, six, nine and twelve months thereafter.

At the time when this sale took place the vendor well understood his inability to proceed with his business. That seems to have been financially out of his power, and information of the fact was communicated to Mr. Orr, who represented the vendee in the transaction. This was an extraordinary disposition of the property of the vendor. He knew, as the agent of the vendee must also have known, that the notes taken could not be held by the vendor, or collected by him. His obligations to his creditors would not permit that to be done. And if the transaction could be allowed to stand it would have the effect, even if the notes were taken by them, of necessarily hindering and delaying them in the collection of their debts for the time the notes had to run. And that such a delay was contemplated by the vendor is to be further inferred from the fact that on the following day he made an assignment of all his property for the benefit of his creditors. What the assignee had to receive under the assignment was this sum of $1,000 in money and these notes, necessarily for a corresponding period delaying the creditors in the collection of their debts.

These facts certainly render the transaction a suspicious one, and that suspicion was increased to a conviction by the further evidence given in the case, for by that evidence it was shown that the business continued to be carried on from the third of October until the twenty-first of December, under Donald Gordon, the vendee. And at the time when the bill of sale was made and delivered, the vendor expected to be employed in the store, although no actual

agreement or arrangement for that purpose was made. And that expectation was afterwards carried into effect, for he stated in his evidence: "I was in fact employed as floor manager after that; I don't think there was anything particular said about that; the same employees were employed; I went right on; there was no change in any of the employees; the same people were continued." The vendor had been examined in supplementary proceeding in which he repeated this expectation on his part, and he was asked what led him to expect it. His answer was "friendship on the part of Donald Gordon; I had known him some time." And after the sale of these goods no sign was put up over the store indicating the business to be that of Donald Gordon. These facts show that no actual or continued change of possession of the property took place, but the vendor, together with the persons previously employed in the store and others afterwards engaged, continued in the possession and sale of the property, carrying on the business substantially as that had previously been done to the time when Donald Gordon himself made a general assignment for the benefit of his creditors, which he did on the 20th of December, 1883. This continued possession and management of the property by the vendor has been declared by the statute to be conclusive evidence of fraud in favor of the creditors of the vendor, unless it shall be made to appear on the part of the persons claiming under the sale that it was made in good faith and without any intent to defraud such creditors. (3 R. S. [6th ed.], 143, § 5.) What the statute has required to avoid this presumption is an actual and continued change of possession of the property sold. No such change of possession was made, and the omission to make it, leaving the vendor in charge of the property and the business, created this statutory presumption of fraud. (*Tilson* v. *Terwilliger*, 56 N. Y., 273.)

And it was not overcome by the statement of the vendor himself, as a witness, that he did not intend to hinder, delay, cheat or defraud his creditors. For the facts, nevertheless, remained out of which such an unlawful intent could be very well inferred by the court. And as the vendee was a party to these facts, he was in like manner involved in the same inference that a fraudulent intent, or an intent at least to hinder and delay the creditors of the vendor, existed upon his part. And in the conclusions drawn by the court

from the evidence, the learned justice presiding at the trial was well warranted by these circumstances. The sale itself was made on terms affording a suspicion, at least, that one of the objects was to prevent the creditors from interfering with the property sold. Its terms afforded ground for such a suspicion, and that was ripened into a complete presumption under the provision of the statute, by the continued possession and management of the property by the vendor.

Upon the other point urged in support of the appeal the opinion of the presiding justice is entitled to approval. But upon this it is considered that the authority of the law is against the conclusion stated in that opinion, and that the motion made for a new trial should therefore be denied, with costs.

Motion for new trial granted, with costs to abide event.